**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DBSI, Inc., | No. CV 09-1205-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Silver State Bank, et al., | |
| Defendant. | |

Pending before this Court is Defendant Federal Deposit Insurance Corporation's[1] ("FDIC") Motion for Summary Judgment (Doc. # 10), and Plaintiff DBSI, Inc.'s Cross Motion for Summary Judgment (Doc. # 15) against FDIC. For the reasons that follow, the Court grants FDIC's motion and, as such, denies DBSI's motion.

**BACKGROUND**

The parties agree that the pertinent facts pertaining to both motions are few and undisputed. In June 2008, DBSI entered into a contract with Silver State Bank under which DBSI would provide labor and materials for the conversion of an existing structure into a new branch of the Silver State Bank in Phoenix. In July 2008, DBSI began providing labor and materials as required under the contract. DBSI performed its work under the contract until its work was stopped due to Silver State's receivership.

---

[1] FDIC is the receiver of Silver State Bank.

1         On September 5, 2008, Silver State Bank was determined to be insolvent by the Financial Institutions Division of the State of Nevada Department of Business and Industry. Also on September 5, 2008, the Commissioner of the Financial Institutions Division appointed FDIC as the receiver/liquidator of Silver State Bank. On October 5, 2008, DBSI recorded lien notices relating to its work done for Silver State Bank. On October 14, 2008, DBSI submitted a proof of claim in the amount of $277,986.09 to FDIC as receiver for Silver State Bank.

        In March 2009, DBSI filed this action in Maricopa County Superior Court, seeking to foreclose on its mechanic's lien. On June 16, 2009, FDIC issued a receivership certificate to DBSI in the amount of $277,986.09. DBSI asserts that FDIC is precluded from paying DBSI with a receivership certificate and, rather, DBSI is entitled to be paid in cash or its equivalent, or permitted to foreclose on its lien.

## ANALYSIS

        Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, summary judgment is mandated, "...against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

        FDIC argues that because DBSI failed to perfect or otherwise secure its lien prior to receivership, FDIC's issuing of a receivership certificate to DBSI in the amount of $277,986.09 satisfies DBSI's claim. In response, DBSI argues that, regardless of whether it perfected its lien prior to receivership, DBSI is still entitled to a cash payment because DBSI possessed legally enforceable lien rights prior to the date of receivership. Based upon Congress' dictates as codified in the Financial Institutions Reform, Recovery, and

Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821, and applicable Arizona law in the area of mechanic's liens, the Court agrees with FDIC.

In Arizona, a mechanic's lien is automatically created whenever a person labors or furnishes materials for the construction or improvement of a building or structure:

> [E]very person who labors or furnishes professional services, materials, machinery, fixtures or tools in the construction, alteration or repair of any building, or other structure or improvement, shall have a lien on such building, structure or improvement for the work or labor done or professional services, materials, machinery, fixtures or tools furnished . . . ."

ARIZ. REV. STAT. § 33-981(A) (2007). Moreover, in addition to being automatically created whenever a person begins work, a mechanic's lien in Arizona attaches once the work begins. *James Weller, Inc. v. Hansen*, 517 P.2d 1110, 1116 (Ariz. Ct. App. 1973) ("In Arizona, a mechanic's lien attaches and begins to accrue at the time the labor is commenced or the materials are furnished.").

In this case, DBSI began work for Silver State Bank in July 2008. Thus, at this time, once DBSI began providing labor and materials, a mechanic's lien was created that attached automatically. However, perfection of a mechanic's lien in Arizona is not automatic.

The Arizona legislature, in a statute titled in part "Procedure to perfect lien," expressly provides the means for perfection of a mechanic's lien:

> In order to impress and secure the lien provided for in this article, every person claiming the benefits of this article, within one hundred twenty days after completion of a building, structure or improvement . . . shall make duplicate copies of a notice and claim of lien and record one copy with the county recorder of the county in which the property or some part of the property is located, and within a reasonable time thereafter serve the remaining copy upon the owner of the building, structure or improvement, if he can be found within the county.

ARIZ. REV. STAT. § 33-993(A) (2007). Here, DBSI recorded its lien notices as required under § 33-993(A) on October 5, 2008. Thus, DBSI did not secure its mechanic's lien prior to the date of receivership, September 5, 2008.

Nevertheless, DBSI asserts that "when a mechanics' lien notice is recorded, the perfection of the subject lien relates back to the time that labor and/or materials were first

furnished." (Doc. # 13 at p. 5.) In support of its assertion, DBSI cites only *Adams Insulation Co. v. Los Portales Associates, L.P.*, 804 P.2d 841 (Ariz. Ct. App. 1991). *Adams*, however, did not address whether perfection relates back to the time labor is commenced. In *Adams*, the only issue was whether plaintiff was licensed at the time its cause of action arose as required by statute. *Id.* at 842. *See also* ARIZ. REV. STAT. § 32-1153 (2008) (stating that a contractor is not permitted to sue to collect compensation for acts performed for which a license is required unless the contractor alleges and proves that it was licensed "when the contract sued upon was entered into and when the alleged cause of action arose"). For the purposes of answering this question, the Arizona Court of Appeals held that a cause of action for a mechanic's lien arises at the time the work commences. "A mechanic's lien is a statutory enforcement procedure enacted to protect laborers and material suppliers; it does not, however, create the cause of action. That arises when the contractor performs and is not paid for that performance." *Adams*, 804 P.2d at 842 (citation omitted). The Court does not disagree that a cause of action based upon a failure to pay the contractor arises when the contractor is not paid as required by the applicable contract. Indeed, this is consistent with the principles surrounding the creation and attachment of a mechanic's lien as discussed above. However, when a cause of action arises in this context adds nothing to when a mechanic's lien is perfected.

   Both parties agree that "[t]he rights of the parties become fixed as of the date of insolvency." *First Franklin Bank-New York v. Fed. Deposit Ins. Corp.*, 634 F.2d 1222, 1225 (9th Cir. 1980). At the date of insolvency–September 5, 2008–DBSI had a valid mechanic's lien that attached in July 2008 when DBSI began the work under the contract. However, DBSI's lien was not perfected by September 5. The Arizona legislature has made clear that "[i]n order to *impress and secure the lien* provided for in this article, every person claiming the benefits of this article . . . shall make duplicate copies of a notice and claim of lien and record one copy with the county recorder . . . ." ARIZ. REV. STAT. § 33-993(A) (emphasis

added). DBSI did not "impress and secure the lien" before September 5, the date of receivership. As such, DBSI's lien was not perfected before the date of receivership.

In 1989, in response to the nation's banking crisis, Congress enacted FIRREA, 12 U.S.C. § 1821. "The statute 'allows the FDIC to act as receiver or conservator of a failed institution for the protection of depositors and creditors,' establishing a scheme for dealing with claims against the failed institution." *Battista v. Fed. Deposit Ins. Corp.*, 195 F.3d 1113, 1116 (9th Cir. 1999) (quoting *Sharpe v. Fed. Deposit Ins. Corp.,* 126 F.3d 1147, 1154 (9th Cir. 1997)). Section 1821(d) outlines the powers and duties of the FDIC as receiver. The FDIC is authorized to determine and pay claims in accordance with section 1821(d) against the financial institution placed into receivership. Subsection 1821(d)(11) establishes a distribution priority for claims to the financial institution's assets:

> Subject to section 1815(e)(2)(C) of this title, amounts realized from the liquidation or other resolution of any insured depository institution by any receiver appointed for such institution shall be distributed to pay claims (*other than secured claims to the extent of any such security*) in the following order of priority:
>
> (i) Administrative expenses of the receiver.
>
> (ii) Any deposit liability of the institution.
>
> (iii) Any other general or senior liability of the institution (which is not a liability described in clause (iv) or (v)).
>
> (iv) Any obligation subordinated to depositors or general creditors (which is not an obligation described in clause (v)).
>
> (v) Any obligation to shareholders or members arising as a result of their status as shareholders or members (including any depository institution holding company or any shareholder or creditor of such company).

12 U.S.C. § 1821(d)(11)(A) (emphasis added).

DBSI argues that it is exempted from this distribution priority mandated by Congress because it falls under the exception contained in the first paragraph that exempts secured claims: "other than secured claims to the extent of any such security." However, as discussed earlier, DBSI's claim–because DBSI failed to perfect prior to the date of receivership–is not secure. ARIZ. REV. STAT. § 33-993(A) ("In order to *impress and secure the lien* provided for

in this article, every person claiming the benefits of this article . . . shall make duplicate copies of a notice and claim of lien and record one copy with the county recorder . . . .") (emphasis added). Accordingly, any attempt on the part of DBSI to escape the order of priority contained in Section 1821(d)(11) must fail. *See also Battista*, 195 F.3d at 1116 ("FDIC may use receiver's certificates as its manner of payment because requiring cash payments would subvert the comprehensive scheme of FIRREA, including §1821(i)(2)'s limitation on an unsecured general creditor's claim to only a pro rata share of the proceeds from the liquidation of the financial institution's assets."); *Resolution Trust Corp. v. Cheshire Mgmt. Co., Inc.*, 18 F.3d 330, 334 (6th Cir. 1994) ("Congress prohibited any general (or, 'unsecured') creditor from receiving more than its *pro rata* share of receivership assets."); *Franklin Bank v. Fed. Deposit Ins. Corp.*, 850 F.Supp. 845, 847 (N.D. Cal. 1994) ("FIRREA limits recovery on an unsecured general creditor claim to a *pro rata* share of the proceeds of the liquidation of the failed institution.").

Lastly, DBSI argues that Section 1821(e)(12) "expressly states that FDIC has no authority to avoid the interests of secured creditors such as DBSI." (Doc. # 13 at p. 8.) Section 1821(e)(12), titled "Certain security interests not avoidable," provides:

> No provision of this subsection shall be construed as permitting the avoidance of any legally enforceable or perfected security interest in any of the assets of any depository institution except where such an interest is taken in contemplation of the institution's insolvency or with the intent to hinder, delay, or defraud the institution or the creditors of such institution.

As discussed earlier, DBSI's lien was not perfected prior to the date of receivership. DBSI urges, however, that the "legally enforceable" language contained in Section 1821(e)(12) elevates its lien to the level of a security interest not subject to avoidance. That is, because mechanic's liens relate back to the time of construction for creation and attachment purposes, DBSI argues that it had a "legally enforceable" security interest. The Court disagrees, as Arizona law is contrary to DBSI's assertion.

It is undisputed that DBSI failed to file the notice as required by Section 33-933 before the date of receivership. To suggest that DBSI's mechanic's lien was enforceable


before the date of receivership implies that DBSI could have enforced its mechanic's lien without even filing the notice required by Section 33-933. Arizona law provides no such process for enforcing mechanic's liens. The statute is clear: "In order to impress and secure the lien provided for in this article, every person claiming the benefits of this article . . . *shall*" file the required notice. ARIZ. REV. STAT. § 33-993(A) (emphasis added). *See also Lewis v. Midway Lumber, Inc.*, 561 P.2d 750 (Ariz. Ct. App. 1977) (finding certain liens valid and others invalid for their failure to abide by Section 33-993); *Williams v. A. J. Bayless Markets, Inc.*, 476 P.2d 869 (Ariz. Ct. App. 1970) (same). Because DBSI filed its notice under Section 33-993 after the date of receivership, and because "[t]he rights of the parties become fixed as of the date of insolvency," *First Franklin*, 634 F.2d at 1225, DBSI's lien is not a "legally enforceable" claim for the purposes of exemption under Section 1821(e)(12) of FIRREA.

## CONCLUSION

Therefore, because DBSI failed to perfect or otherwise secure its mechanic's lien prior to the date of receivership, DBSI cannot escape the payment priority structure contained in FIRREA. Under FIRREA's pay structure, DBSI's claim has been paid, albeit with a receivership certificate. It is not the place of this Court to require a cash payment when Congress, through FIRREA, provides otherwise.

Accordingly,

**IT IS ORDERED** that Defendant Federal Deposit Insurance Corporation's Motion for Summary Judgment (Doc. # 10) is granted.

**IT IS FURTHER ORDERED** that Plaintiff DBSI, Inc.'s Cross Motion for Summary Judgment (Doc. # 15) is denied.

**IT IS FURTHER ORDERED** that because Plaintiff DBSI does not have an enforceable lien as discussed above, and because Plaintiff DBSI has been paid in full via a receivership certificate, Plaintiff DBSI cannot prevail on the remaining claims in the

Complaint.  Accordingly, the Clerk of the Court shall enter judgment in this case in favor of Defendants, Plaintiff shall take nothing.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall close this case.

DATED this 9th day of October, 2009.

/s/ James A. Teilborg
James A. Teilborg
United States District Judge